Marshall, C. J.
 

 This is an error proceeding in this court seeking the reversal of an order made by the Public Utilities Commission. The complaint filed with the commission on June 4, 1930, alleged that the railroad company was operating a regularly scheduled passenger train with a crew less than that required by Section 12553, General Code. That section, omitting the portions not pertinent to this inquiry, reads:
 

 “Whoever, being superintendent * * * of a railroad company, sends or causes to be sent outside of yard limits, a passenger train of not more than five cars, any one of which carries passengers, with a crew consisting of less than one engineer, one fireman, one conductor and one brakeman * * * or, if when more than two cars, either of which carries passengers, requires a brakeman to perform the duties of baggage master or express agent, shall be
 
 *526
 
 fined not less than twenty-five ($25.00) dollars for each offense.”
 

 Upon the filing of the complaint, the commission directed one of its inspectors to investigate and report, and the report states, in substance, that the train in question consists of an engine, a combination mail baggage car, and one day coach, with a crew consisting of one engineer, one fireman, and one conductor; that in the combination mail and baggage car there is one man in charge of the mail and one man known as an expressman, who delivers the baggage and express and is paid by the express company, and that neither of them has anything to do with the operation of the train; that the conductor looks after the tickets, gets the orders, does the flagging, and assists passengers in entering or alighting from the cars. The inspector concludes his report with the opinion that it is impossible for one man to render all of this service. The report further states that prior to June 1,1930, there was a regular brakeman on this train. He further states that the train is not given the consideration shown other first-class trains, by reason of the fact that freight trains are given preference to the main track, and this particular train takes the siding when meeting and passing other trains, which causes extra work for the conductor.
 

 It is apparent from the record that the train does not haul many passengers, and yet it is conceded that it does operate as a train for the transportation of passengers. The railroad company contends that the train is being operated in accordance with the statute, and that, by reason of there being very
 
 *527
 
 few passengers, and only a small quantity of baggage and express, tbe baggageman has time to perform many of the duties which usually devolve upon a brakeman. The record discloses that the baggage-man does not perform all the duties ordinarily assigned to a brakeman. We quote the record on this point:
 

 “Q. Chairman Geiger: Does he perform the duties that are ordinarily assigned to a brakeman? The Witness: Not in its entirety, a portion of it.
 

 “Chairman Geiger: What does he do — what does he not do that an ordinary brakeman would do?
 

 “The Witness: Possibly throw switches, help the passengers to board.
 

 “Chairman Geiger: Could we equally well say that rather than imposing the duties of a baggage-man and expressman upon a brakeman that you have imposed the duties of a brakeman upon a man who is primarily a baggageman and expressman?
 

 ‘
 
 ‘
 
 The Witness: I don’t believe that is clear.
 

 “Chairman Geiger: What is this man, is he a baggageman and expressman doing some of the duties of a brakeman?
 

 “The Witness: Yes, sir.
 

 “Chairman Geiger: He is not a brakeman doing some of the duties of a baggageman and express-man?
 

 “The Witness: He has been a joint employee on these trains for years.
 

 ‘ ‘ Chairman Geiger: But he has never been called a brakeman before June 2, 1930?
 

 ‘ ‘ The Witness: No, sir.
 

 
 *528
 
 “Mr. Knowles: And lie is never called on the roster as a brakeman, is he?
 

 ‘ ‘ The Witness: No, sir.
 

 “Mr. Knowles: He is not now on the roster as a brakeman?
 

 ‘ ‘ The Witness: No, sir. ’ ’
 

 The testimony quoted is that of A. C. Druckemiller, trainmaster for the railroad, and may therefore properly be considered as stating conceded facts.
 

 The problem involves an interpretation of the statute and its application to the conceded facts. The railroad company is only complying with the statute upon the theory that the baggageman, employed as such, is discharging a sufficient number of the detailed duties of a brakeman to constitute a compliance with the statute. The train does not carry more than two cars, and that portion of the statute forbidding a brakeman to perform the duties of baggageman or express agent does not apply. There is therefore nothing to forbid a brakeman from performing some of the duties of baggageman or express agent. On the other hand, the statute does not provide that a train consisting of only two cars may be served without a brakeman, neither does it provide that a baggageman or express agent may take the place of a brakeman and perform only a part of the duties of a brakeman. The statute very clearly requires a brakeman as a part of the crew of every train carrying passengers. Manifestly it can make no difference by what name the servant is called, provided some particular servant in the employ of the railroad company performs all the duties usually assigned to a brakeman. What these duties are in detail is not shown by this record, and it is not
 
 *529
 
 necessary to inquire. But it is conceded by the train-master that a part of the duties usually assigned to a brakeman is now being performed by the conductor, and it is this particular thing which the statute is designed to prevent. It is evidently the purpose of the statute to make the transportation of passengers safe. Whether or not that transportation is rendered more safe by literal compliance with the statute we need not inquire. The question before us is not the political question of the wisdom of the statute, but the justiciable question of its proper interpretation.
 

 The Public Utilities Commission has declared a rule of strict compliance, while the railroad company contends that the service need be such only as is reasonably necessary for the safety of passengers and employees on trains. To the Legislature has been committed the question of providing the regulations which will make common carrier transportation safe. The Legislature has the undoubted power to regulate. The meaning of the language employed in the statute is clear. Its apparent purpose and intent is that the duties of the conductor and the brakeman be entirely separate and distinct, and that each shall discharge the duties of his separate position. If, as is apparently contendéd by the railroad company, the regulations are unnecessarily strict for the operation of a train of two cars, the remedy lies with the Legislature, which deals with the policy, and not with the court, which deals only with a determination of the legislative intent. It is conceded by the Attorney G-eneral that a regularly constituted brakeman on a two-car train, who discharges all the duties pertaining to the position of brakeman, and who has time, in
 
 *530
 
 addition to the performance of that service, to also perform the duties of baggageman or expressman, is not forbidden to do so. With this interpretation we concur. This view, however, does not in the least obviate the plain requirement of having one person, whether he carry title of brakeman, or other designation, perform all the duties which customarily devolve upon a brakeman, and having another person perform all the duties which customarily devolve upon a conductor. It is apparent from this record and from the concessions of the trainmaster that this requirement has not been met in the operation of this particular train, and the order of the commission will therefore be affirmed.
 

 Order affirmed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.